UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| ANNASTASIAH MUDIWA MHAKA, <br><br> Plaintiff, <br><br> vs. <br><br> GENSPERA, INC., JOHN T. ISAACS, and SAMUEL R. DENMEADE, <br><br> Defendants. | Civil Action No. 12-cv-3302 MJG <br><br> Removed From Circuit Court For Baltimore City, Civil Action No. 24-C-12-006407 OT |

**MEMORANDUM IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS**

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendants GenSpera, Inc., John T. Isaacs and Samuel R. Denmeade respectfully request that this Court dismiss the Plaintiff's claims because: (1) they are barred by Rule 13(a) of the Federal Rules of Civil Procedure and by the doctrine prohibiting claim splitting; and (2) they are preempted by federal patent law.

**I.   BACKGROUND**

On March 12, 2012, in response to threats from Plaintiff Annastasiah Mhaka ("Mhaka") to bring an action to "correct" the inventorship of U.S. Patent No. 7,468,354 ("the '354 patent") and U.S. Patent No. 7,767,648 ("the '648 patent") pursuant to 35 U.S.C. § 256, GenSpera

initiated a declaratory judgment action in this Court.[1] (No. 12-772 Doc. No. 1.) On April 2, 2012, Mhaka filed an answer and counterclaims in which she sought correction of the '354 patent and the '648 patent and to be added as a joint inventor. (No. 12-772 Doc. No. 12.) She brought no other counterclaims. On May 16, 2012, Mhaka filed an amended answer and counterclaims in which she again sought correction of the '354 patent and the '648 patent and to be added as a joint inventor (but relinquished certain affirmative defenses). (No. 12-772 Doc. No. 25.) Again, she brought no other counterclaims. The case proceeded through fact discovery and into expert discovery, and on October 24, 2012, the Court ruled that GenSpera was entitled to move for summary judgment on the grounds that, because Mhaka's alleged inventive contribution took place after the application and after the claims' priority date, the Court cannot correct the patents' inventorship under 35 U.S.C. § 256 to add Mhaka as inventor. (No. 12-772 Doc. No. 36.)

One week later Mhaka filed a separate case in the Circuit Court for Baltimore, Maryland, styled *Annastasiah Mudiwa Mhaka v. GenSpera, Inc., et al.*, Case No. 24-C-12-006407 OT. (Stolworthy Decl. ¶ 6 Ex. 3). In her Complaint, she repeated many of the same allegations as set forth in her pleadings in the original federal case. In fact, at least 65 paragraphs in the Complaint are virtually identical to correlative paragraphs in Mhaka's pleadings in the original federal case. As in the original federal case, Mhaka alleged that "[t]hrough independent investigation, [she]

---

[1] On January 6, 2012, Mhaka's counsel wrote to GenSpera, stating that "Dr. Mhaka contributed in a significant, and inventive way, to U.S. Patents 7,468,354 and 7,767,648" and that "[she] was improperly omitted as a named inventor on these patents[.]" (Stolworthy Decl. ¶ 4 Ex. 1). On March 9, 2012, after ensuing discussions with GenSpera's counsel proved unsatisfactory, Mhaka's counsel signaled her intent to "file to correct inventorship and then issue third party subpoenas as soon thereafter as the discovery schedule wld [sic] permit." (Stolworthy Decl. ¶ 5 Ex. 2).

made significant contributions to the inventions claimed in U.S. Patent Nos. 7,468,354 ("the '354 patent") and 7,767,648 ("the '648 patent")[.]"  (Complaint ¶ 1.)  And just as in the original federal case, she claimed to have been wrongfully left off of the '354 Patent and '648 Patent. (Complaint ¶¶ 1, 71.)  In the state court complaint, however, Mhaka did not seek to have the patents "corrected."  To the contrary, Mhaka admitted that such a claim would be untenable as a matter of law.  Specifically, she conceded that "[a]dding Dr. Mhaka to the Patents would necessitate their invalidity because they would necessarily run afoul of 35 U.S.C. § 112[,]" something prohibited under the law because "35 U.S.C. § 256 cannot be used to correct the inventorship of a patent where to do so would necessitate the patent's invalidity."  (Complaint ¶¶ 85-86.)  Rather than bring another action under section 256, Mhaka sought to assert tort claims for conversion, constructive fraud and unjust enrichment.  On November 8, 2012, GenSpera removed the state court action on the ground that the complaint's allegations and claims raise substantial questions of federal patent law.

**II.     ARGUMENT**

Mhaka's tort claims should be dismissed for two independent reasons.  *First*, if they were to be brought at all, they should have been timely brought in the original federal case as compulsory counterclaims.  Having let the fact discovery and expert report deadlines expire, however, and facing summary judgment, Mhaka sought to renew her grievances against GenSpera and the inventors in a new forum and under new legal theories but based on precisely the same operative facts.  Not only does this tactic violate Rule 13(a), it also violates the judicial doctrine prohibiting claim splitting.  *Second*, even if the tort claims did not run afoul of the prohibition against claim splitting, they would still be preempted by federal patent law.  While

styled as torts, Mhaka's allegations are, at their base, that the inventors and GenSpera wrongly omitted her as an inventor and committed fraud during the prosecution of the applications that issued as the '354 patent and '648 patent. Issues of inventorship and fraud during prosecution of a patent application are governed by federal patent law. As a result, Mhaka's tort claims — which would subject such issues to varying standards of proof, and allow them to be decided by a jury rather than a judge — are preempted.

### A. Mhaka's Tort Claims Are Barred Under Rule 13(a) And The Doctrine Against Claim Splitting

Federal Rule of Civil Procedure 13(a) provides that "[a] pleading shall state as a counterclaim any claim which at the time of serving of the pleading, the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction." Fed. R. Civ. P. 13(a). Rule 13(a) thus bars a party from initiating a second suit to bring claims that should have been brought, if at all, as compulsory counterclaims in a previous action. *Genentech, Inc. v. Eli Lilly & Co.*, 998 F.2d 931, 938 (Fed. Cir. 1993) (explaining that Rule 13(a) "is particularly directed against the failure of a party to assert a counterclaim in one action, followed by the institution of a second action wherein the counterclaim is the basis of the complaint"), *abrogated on other grounds by Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995).

There can be no question that the allegations supporting Mhaka's tort claims in her new complaint arise out of the same transaction or occurrence that form the basis of Mhaka's allegations and counterclaims in the original federal action. She is once again claiming to have made "significant and novel contributions to the inventions claimed in [the '354 patent and the

'648 patent." (Complaint ¶ 1.) The "critical component" that she allegedly conceived is precisely the same. *Id*. She is again claiming to be a "joint inventor of the invention" who is aggrieved because "she was left off the patents as a named inventor." (Complaint ¶¶ 66, 70, 71.) Now, however, as this case enters the summary judgment phase, Mhaka has sought to institute a new action in state court to assert tort claims based upon precisely the same transactions and allegations that previously formed the basis of her inventorship counterclaims.

Rule 13(a) prohibits this strategy. The district court's analysis in *Kim v. Sara Lee Bakery Group, Inc*., 412 F. Supp.2d 929 (N.D. Ill. 2006) is highly instructive. In that case, the plaintiff first filed a patent infringement suit against the defendant. *Id*. at 930. After that case proceeded through discovery, the plaintiff filed a second suit asserting other claims of infringement by the defendant of the very same patent. *Id.* at 931-34. Citing Rule 13(a), the district court dismissed the second action: "[U]nder Federal Circuit law, and consistent with Rule 13(a)'s purpose of avoiding the spawning of multiple actions from a common factual background, the claims in the Second Action are compulsory counterclaims in the First Action, and the Second Action therefore merits dismissal." *Id.* at 937.

The *Kim* court also relied on the judicial prohibition against claim splitting, *see id.* at 934, a doctrine that has been consistently endorsed and applied by this Court as well. *See Hare v. Opryland Hospitality, Inc.*, Civil Action No. DKC 11–1439, 2011 WL 6153128, at **3-4 (D. Md. Dec. 9, 2011); *Levy v. City of New Carrollton*, Civil Action No. DKC 09–2552, 2010 WL 3190876, at *3 (D. Md. Aug. 11, 2010); *Sensormatic Sec. Corp. v. Sensormatic Elec. Corp*., 452 F. Supp.2d 621, 626-28 (D. Md. 2006) ("*Sensormatic II*"); *Sensormatic Sec. Corp. v. Sensormatic Elec. Corp*., 329 F. Supp.2d 574, 581-83 (D. Md. 2004) ("*Sensormatic I*"). Like the

doctrine of *res judicata*, the prohibition against claim splitting ensures judicial economy and preserves the integrity of the judicial process. *See Sensormatic II*, 452 F. Supp.2d at 626 ("Like res judicata, claim splitting 'prohibits a plaintiff from prosecuting its case piecemeal, and requires that all claims arising out of a single wrong be presented in one action.'") (quoting *Myers v. Colgate-Palmolive Co.*, 102 F. Supp.2d 1208, 1224 (D. Kan. 2000)); *see also Katz v. Gerardi*, 655 F.3d 1212, 1218 (10th Cir. 2011) ("To be sure, claim splitting and res judicata both serve the same interests of promoting judicial economy and shielding parties from vexatious concurrent or duplicative litigation."); *Curtis v. Citibank, N.A.*, 226 F.3d 133, 138 (2d Cir. 2000) ("The rule against duplicative litigation is distinct from but related to the doctrine of claim preclusion or *res judicata*."); *see also W. Gulf Maritime Ass'n v. ILA Deep Sea Local 24*, 751 F.2d 721, 729 (5th Cir. 1997) (explaining that claim splitting functions "to avoid the waste of duplication, to avoid rulings which may trench upon the authority of sister courts, and to avoid piecemeal resolution of issues that call for a uniform result") (citations omitted). But unlike *res judicata*, claim spitting does not require entry of final judgment in the first action in order to have effect. *See Sensormatic II*, 452 F. Supp.2d at 626 n. 2; *see also Brady v. US Fin. Svc., Inc.*, 538 F.3d 1319, 1327 n.10 (10th Cir. 2008) ("The first suit need not reach final judgment before a motion to dismiss based on improper claim-splitting can be granted."). Rather, the test for claim splitting is "whether the first suit, *assuming it were final*, would preclude the second suit." *Katz*, 655 F.3d at 1218 (emphasis added).

This Court's analysis in the *Hare* case shows clearly just how Mhaka's new tort claims violate the prohibition against claim splitting and why they should be dismissed. In *Hare*, the plaintiff supposedly was assaulted while at a resort operated by the defendant. *Hare*, 2011 WL

6153128, at *1.  After originally brining claims alleging liability under *respondeat superior* and for negligent hiring, retention, and training, the plaintiff later sought to add new negligence claims.  *Id*. at **1-2.  When the Court denied the motion to amend as untimely, the plaintiff initiated a new suit.  *Id.* at *2.  The defendant responded by moving to dismiss on claim splitting grounds.  *Id*.  The Court started its analysis by noting that "[i]n a claim splitting case, as with the traditional *res judicata* analysis, the second suit will be barred if the claim involves the same parties or their privies and 'arises out of the same transaction or series of trans-actions' as the first claim.  *Id*. at *3 (quoting *Trustmark Ins. Co. v. ESLU, Inc*., 299 F.3d 1265, 1269–70 (11th Cir.2002)).  In making this determination, the Court noted, it "must 'assess whether the second suit raises issues that should have been brought in the first.'"  *Id*. (quoting *Curtis v. Citibank, N.A*., 226 F.3d 133, 140 (2nd Cir.2000)).  Turning to the plaintiff's new negligence claims, the Court emphasized that "the underlying conduct giving rise to the claims in [the original case] and [the second case] [was] not just similar, but … identical."  *Id*.  The Court further emphasized that, "[b]ecause the negligence claim is founded upon the same set of allegations that [was] presented in [the original case] a negligence claim could have been asserted in that case at the earliest stages of the pleadings."  *Id*.  Concluding that the new negligence claims thus violated the prohibition against claim splitting, the Court dismissed the second complaint.  *Id.* at *4.

The Court's claim splitting analysis in *Hare* is fully consistent with this Court's other precedent and with precedent from district courts elsewhere.  *See Levy*, 2010 WL 3190876, at *3 (dismissing complaint containing tort claims based on same operative facts as in prior action); *Sensormatic II,* 452 F. Supp.2d at 626-28 (dismissing complaint containing breach of contract claims based on same operative facts as in prior action); *Sensormatic I*, 329 F. Supp.2d at 581-83

(same); see also *Ameritox, Ltd. v. Aegis Sciences Corp.*, No. 3:08-CV-1168-D, 2009 WL 305874, at *5 (N.D. Tex. Feb. 9, 2009) (dismissing complaint containing Lanham Act claim based on same operative facts as formed the basis of prior patent infringement complaint); *Single Chip Sys. Corp. v. Intermec IP Corp.*, 495 F. Supp.2d 1052, 1062-65 (S.D. Cal. 2007) (concluding that doctrine of claim spitting prohibited second infringement suit based on same transactional nucleus of facts even though the plaintiff was relying on a new legal theory); *Ox Bow Energy, Inc. v. Koch Indus., Inc.*, 686 F. Supp. 278, 282-83 (D. Kan 1988) (after plaintiffs brought unsuccessful securities action, subsequent tort action based on same facts was barred by doctrine against claim splitting).

Mhaka's new complaint is based on precisely the same operative facts that formed the basis of her inventorship counterclaims in the original federal action. All that has changed is her legal theory. Recognizing that she was wrong on the law of inventorship, she now wants to start over and to benefit from a second chance at fact and expert discovery and the possibility of a trial before a jury rather than a judge. Having a mistaken conception of the applicable law, however, is no justification for having failed to assert these claims in a timely fashion in the original federal case. *See Sensormatic II,* 452 F. Supp.2d at 626-28 (noting that the plaintiff's ignorance of its potential legal claim, as opposed to the facts forming the basis thereof, was immaterial to whether claim-splitting applied to bar the claim). The law is clear. The tort claims in Mhaka's recent state law complaint are barred.

**B.    Mhaka's Tort Claims Are Preempted By Federal Patent Law**

Even if Mhaka's tort claims were not improper under Rule 13(a) and barred by the doctrine against claim splitting, they would still be subject to dismissal because they are

preempted by federal patent law. The Supreme Court has held that under the Supremacy Clause state law "must yield to the extent that it clashes with the balance struck by Congress in our patent laws." *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 152 (1989). Thus, as the Federal Circuit has explained, "[i]f a plaintiff bases its tort action on conduct that is protected *or governed* by federal patent law, then the plaintiff may not invoke the state law remedy *which must be preempted* for conflict with federal patent law." *Hunter Douglas, Inc. v. Harmonic Design, Inc*., 153 F.3d 1318, 1335 (Fed. Cir. 1998) (emphasis added), *overruled on other grounds*, *Midwest Indus., Inc. v. Karavan Trailers Inc*., 175 F.3d 1356 (Fed. Cir. 1999).

As explained in *Methode Electronics Inc. v. Hewlett-Packard Co*., C 99-04214 SBA, 2000 WL 1157933, 55 USPQ2d (N.D. Cal. May 4, 2000), a party's conduct in deciding who to include as an inventor for purpose of its patent application is explicitly governed by federal law, and so state tort claims based on such conduct are preempted. In *Methode*, the defendant — like Mhaka — asserted tort claims (including conversion and unjust enrichment) premised on allegations that the defendant fraudulently omitted an inventor from a patent. *Id*. at *1605 ("The fundamental premise of each of these counterclaims as pled is that Methode should have named Finisar on the patent."). The *Methode* court noted, however, that "[t]he question of who should be named on a patent is squarely covered by federal patent law." *Id*. Because "[a]llowing a litigant to press a state law claim premised on this question would constitute 'too great an encroachment on the federal patent system to be tolerated," the court dismissed the tort claims. *Id*. (quoting *Canter v. West Publishing Co*., 1999 U.S. Dist. LEXIS 3815 at *31 (N.D. Cal. 1999)).

Similarly, where a state tort claim is premised on misconduct before the U.S. Patent Office it is also preempted, because such misconduct is squarely governed by federal law of inequitable conduct. *Semiconductor Energy Lab. Co. v. Samsung Elecs. Co.*, 204 F.3d 1368, 1382 (Fed. Cir. 2000) (state-law tort claims premised on misconduct before the PTO are preempted by federal patent law because the state-law claims "occupy a field identical in scope with the inequitable conduct defense"); *Abbott Labs. v. Brennan*, 952 F.2d 1346, 1355-57 (Fed. Cir. 1991).[2]  Here, the core of Mhaka's tort claims is that the Defendants acted fraudulently in: (1) submitting an amended claim covering a subgenus of compounds comprising 12ADT (ADT being an analog of the molecule called Thapsigargin) linked to the aspartate residue of a peptide having the sequence Asp-Glu*Glu*Glu*Glu where at least one of the bonds designated with a "*" is a gamma linkage; and (2) representing to the Patent Office that "No new matter has been added." (Complaint ¶ 83.)  According to Mhaka, this was a misrepresentation to the Patent Office because "new matter, in the form of Dr. Mhaka's inventive contributions, had indeed been added." *Id*.  Mhaka thus claims that when Defendants supposedly "slipped [her contributions] into GenSpera's patent applications" during prosecution, they engaged in actionable conduct. (Complaint ¶ 84.)

Such conduct, however, is governed by federal patent law, and state law claims based on such conduct are thus preempted. *See Semiconductor Energy Lab. Co. v. Samsung Elecs. Co.*, 204 F.3d 1368, 1382 (Fed. Cir. 2000) (state RICO claim based on conduct before the Patent Office was preempted); *In re K-Dur Antitrust Litig.*, No. 01-1652 (JAG), 2007 WL 5297755, at

---

[2] Federal Circuit law (rather than the law of the regional circuit) governs "whether the patent laws preempt a state-law tort claim." *Globetrotter Software, Inc. v. Elan Computer Group, Inc*., 362 F.3d 1367, 1374 (Fed. Cir. 2004).

\*25 (D.N.J. Mar. 1, 2007) (state law claims preempted because "they rely, either directly or derivatively, upon allegedly fraudulent or inequitable conduct before the PTO to substantiate those claims"); *CardioVention, Inc. v. Medtronic, Inc.*, 430 F. Supp. 2d 933, 940-41 (D. Minn. 2006) ("[F]ederal patent law preempts [tortious interference claim] because the claim does not allege any actionable conduct other than conduct before the PTO."); *In re Ciprofloxacin Hydrochloride Antitrust Litig.*, 363 F. Supp. 2d 514, 542 (E.D.N.Y. 2005) (dismissing claims for violations of "state antitrust and/or consumer protection laws by virtue of alleged inequitable conduct before the PTO").  The law of preemption simply does not permit Mhaka to police Defendants' conduct before the Patent Office based on theories of state tort liability and to try those theories to a jury based on a less stringent legal test and a potentially lower standard of proof than the federal patent law governing inequitable conduct law requires.[3]

---

[3] To hold a patent unenforceable due to inequitable conduct, there must be clear and convincing evidence that the applicant (1) made an affirmative misrepresentation of material fact, failed to disclose material information, or submitted false material information, and (2) intended to deceive the USPTO.  *Impax Labs. v. Aventis Pharm. Inc*., 468 F.3d 1366, 1374 (Fed. Cir. 2006).  In a recent decision, the United States Court of Appeals for the Federal Circuit described the "inequitable conduct" doctrine as "the 'atomic bomb' of patent law."  *Therasense v. Becton Dickinson*, 649 F.3d 1276 (Fed. Cir. 2011).  "Left unfettered," the court of appeals noted, "the inequitable conduct doctrine has plagued not only the courts but also the entire patent system."  *Id.* at 1289.  The court thus made a deliberate decision to "tighten[] the standards for finding both intent and materiality in order to redirect a doctrine that has been overused to the detriment of the public."  *Id.* at 1290.

## CONCLUSION

For the reasons stated above, this Court should dismiss each of the tort claims raised in Mhaka's Complaint.

Respectfully submitted,

/s/ Robert A. Stolworthy, Jr.
Robert A. Stolworthy, Jr. (D. Md. Bar No. 29314)
John E. Nilsson (*pro hac vice*)
ARNOLD & PORTER LLP
555 Twelfth Street, NW
Washington, DC 20004
(202) 942-5000
(202) 942-5733 (fax)
Robert.Stolworthy@aporter.com
John.Nilsson@aporter.com

*Counsel for Plaintiff GenSpera, Inc.*

DATED: November 16, 2012

## CERTIFICATE OF SERVICE

I hereby certify that, on November 16, 2012, I filed the foregoing Memorandum in Support of Defendants' Motion to Dismiss via the Court's CM/ECF system, which will deliver electronic notice to each party in this case.

                                        /s/ Robert A. Stolworthy, Jr.
                                        Robert A. Stolworthy, Jr. (D. Md. Bar No. 29314)