```
            IN THE UNITED STATES DISTRICT COURT
               FOR THE DISTRICT OF MARYLAND

GENSPERA, INC.                  *

        Plaintiff               *

     vs.                        *   CIVIL ACTION NO. MJG-12-772

ANNASTASIAH MHAKA               *

        Defendant               *

*       *       *       *       *       *       *       *       *

ANNASTASIAH MHAKA               *

        Plaintiff               *

     vs.                        *   CIVIL ACTION NO. MJG-12-3302

GENSPERA, INC.  et al           *

        Defendants              *

*       *       *       *       *       *       *       *       *
```

MEMORANDUM AND ORDER RE: SUMMARY JUDGMENT

The Court has before it Dr. John Isaacs' and Dr. Samuel Denmeade's Motion for Summary Judgment [Document 83], Counterclaim Defendant GenSpera, Inc.'s Motion for Summary Judgment [Document 106] and the materials submitted relating thereto. The Court has held a hearing and has had the benefit of the arguments of counsel.

I.   BACKGROUND

As discussed more fully herein, two Johns Hopkins University ("JHU") professors obtained United States patents for a pharmaceutical.  A post-graduate student working for the professors claims that she should have been named as a co-inventor.  She seeks the imposition of a constructive trust upon benefits received by the professors.

   A.   The Patents

During, and before, 2000, Drs. John Isaacs ("Isaacs") and Samuel Denmeade ("Denmeade"), while working as professors at JHU, conceived of and developed the idea for a prodrug[1] that would be toxic to prostate cancer cells ("the Prodrug").

Under its intellectual property policy, JHU retains the rights to inventions developed through the university. Accordingly, in December 2000, JHU filed a provisional patent application ("the Application") disclosing the Prodrug, naming Isaacs and Denmeade as co-inventors.  In November 2001, JHU filed the related Patent Cooperation Treaty ("PCT") application.

---

[1]   Prodrugs are generally formed by attaching an active, therapeutic compound to a transport vehicle like a protein (peptide) or an antibody that keeps the therapeutic effects of the drug inactive until removed in the body. In order to target a drug to only a specific cell type, scientists attach a transport vehicle that can only be removed by the targeted cells.  In this manner, the drug only activates upon a specific interaction, minimizing potentially devastating side effects.

On December 23, 2008, United States Patent No. 7,468,354 ("the '354 Patent") was issued to Isaacs and Denmeade,[2] including a claim relating to a compound referred to herein as "AMM9." A continuation of the '354 Patent, Patent No. 7,767,648 ("the '648 Patent"), was published on June 25, 2009 and issued on August 3, 2010.

B.  GenSpera

In late 2003, Isaacs and Denmeade – having been assigned the rights to the Application - joined with others to form GenSpera, Inc. ("GenSpera"). Since its incorporation, GenSpera has been involved in the development of pharmaceutical products and intellectual property, including, but not limited to, those relating to the Application.

At all times, Isaacs and Denmeade have been minority shareholders in GenSpera, each owning about 4% of the corporate stock.[3]

---

[2] In 2003, JHU decided to cease funding the Application. JHU then assigned the Application to Isaacs and Denmeade in return for the reimbursement of its incurred prosecution expenses and a share of any revenue that might be obtained from any patent that might be issued.

[3] Upon the creation of GenSpera, Isaacs and Denmeade each purchased 231,500 shares of founders' stock. In June 2004, GenSpera purchased back 15% of these shares for the same price. After a stock split in 2004, the remaining founders' shares amounted to 1,199,028 shares apiece, which represents approximately 4% ownership each in GenSpera.

GenSpera accepted financial responsibility for the costs of prosecution of the Application[4] and, in early 2004, Isaacs and Denmeade issued a letter of intent to grant an exclusive license to GenSpera in any resulting patents.

GenSpera began phase one clinical trials of G-202[5] in early 2010. In April 2011, Isaacs and Denmeade granted an exclusive worldwide license to the '354 Patent and the '648 Patent (collectively, "the Patents") to GenSpera.

C. Mhaka's Alleged Co-inventorship

From 1999 to 2005, Annastasiah Mudiwa Mhaka ("Mhaka") was working as a doctoral candidate graduate student in Isaacs' and Denmeade's laboratory. Denmeade served as Mhaka's thesis advisor.

Mhaka performed research related to Isaacs' and Denmeade's prodrug hypothesis to determine which peptide transport vehicle would be the most effective prodrug. According to Mhaka, her research led her, in 2003, to create a compound, AMM9, which ultimately formed the only prodrug claimed in the '354 patent.

---

[4] In 2008, Isaacs and Denmeade paid JHU $17,490 for patent prosecution expenses related to the '354 Patent, and GenSpera reimbursed them, including an allowance for taxes.
[5] The AMM9 compound was renamed G-202 when claimed in the '354 Patent.

4

Mhaka claims that her creation of the AMM9 compound was an inventive contribution and that she should have been named as a joint inventor of the Patents.

Mhaka wrote up her research findings and presented them to Denmeade, as her thesis advisor, in early 2004.  According to Mhaka, Denmeade instructed her to delete all the information disclosing the structure and nature of the AMM9 compound, purportedly to avoid any public disclosure of the novel compound prior to the issuance of the '354 patent. Mhaka informed Denmeade that she thought she should be included as an inventor on the pending patent, but Denmeade advised her that she could not be included.  Mhaka claims that she continued, through 2006, to ask for permission to publish her AMM9 research, but Denmeade denied her the necessary consent.

Mhaka left JHU in 2005 to join a venture capital firm, where she was involved in intellectual property research, including searches of patent databases and drafting provisional patent applications.

II. <u>PROCEDURAL SETTING</u>

On March 12, 2012, GenSpera filed Case No. MJG-12-772 seeking a declaratory judgment establishing that Isaacs and Denmeade "were properly named as inventors" on the Patents "in

...

accordance with 35 U.S.C. § 116" and that Mhaka should not be added to the Patents "as an additional inventor pursuant to 35 U.S.C. § 256." Compl. ¶¶ 37, 42, ECF No. 1, MJG-12-772.

Mhaka counterclaimed seeking to be added as an inventor of the Patents by virtue of 35 U.S.C. § 256.  <u>See</u> Answer, ECF No. 16, MJG-12-772.  After discovery, the parties filed cross-motions for summary judgment.  On April 30, 2013, the Court issued the Memorandum and Order Re: Procedural Matters [Document 59] granting summary judgment to GenSpera because, as discussed therein, a finding that Mhaka added an invention to the Application after the disclosure was filed would invalidate the Patents, and a district court cannot apply § 256 to require the Patent Office to add an inventor to an issued patent when doing so would invalidate the patent.

During the pendency of the cross-motions for summary judgment, on November 1, 2012, Mhaka filed a Complaint in the Circuit Court for Baltimore City, Maryland, presenting state-law tort claims of conversion, constructive fraud, and unjust enrichment against GenSpera, Isaacs, and Denmeade.  <u>See</u> Compl., ECF No. 2, MJG-12-3302.  This case was removed to federal court and is MJG-12-3302.

In order to avoid a potential jurisdictional issue, the Court permitted Mhaka to assert the claims presented in MJG-12-3302 to be asserted in an Amended Counterclaim in MJG-12-772. The cases have proceeded on a consolidated basis under a joint caption, and further discovery commenced.

By the instant motions, GenSpera, Isaacs, and Denmeade seek summary judgment on all claims against them.

III. SUMMARY JUDGMENT STANDARD

A motion for summary judgment shall be granted if the pleadings and supporting documents "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

The well-established principles pertinent to summary judgment motions can be distilled to a simple statement: The Court may look at the evidence presented in regard to a motion for summary judgment through the non-movant's rose-colored glasses, but must view it realistically. After so doing, the essential question is whether a reasonable fact finder could return a verdict for the non-movant or whether the movant would, at trial, be entitled to judgment as a matter of law. See, e.g., Celotex Corp. v. Catrett, 477 U.S. 317, 322-323 (1986);

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Shealy v. Winston, 929 F.2d 1009, 1012 (4th Cir. 1991). Thus, in order to defeat a motion for summary judgment, "the party opposing the motion must present evidence of specific facts from which the finder of fact could reasonably find for him or her." Mackey v. Shalala, 43 F. Supp. 2d 559, 564 (D. Md. 1999) (emphasis added).

When evaluating a motion for summary judgment, the Court must bear in mind that the "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" Celotex, 477 U.S. at 327 (quoting Rule 1 of the Federal Rules of Civil Procedure).

IV. DISCUSSION

    A. Mhaka's Contentions

Mhaka contends, and the Court assumes for present purposes, that she invented and reduced to practice the AMM9 compound in or about 2003. Therefore, she contends, Isaacs and Denmeade should have named her as a co-inventor either in a continuation-in-part of the Application claiming the newly invented matter or

8

by filing a new patent application with a new disclosure.[6] Instead, in November 2006, Isaacs and Denmeade, wrongfully according to Mhaka, amended the Application to claim Mhaka's AMM9 compound as part of their invention.

Mhaka contends that she should have participated in the benefits that Isaacs and Denmeade received from her invention of AMM9.[7] Thus she seeks the imposition of a constructive trust[8] upon those benefits, including stock in GenSpera. Mhaka does not assert any ownership interest in the Patents that resulted from the Application. Rather she contends that she has a beneficial interest in her invention and that her claims are equitable in nature.

B. There is No Claim Against GenSpera

As clarified at the motion hearing, Mhaka does not assert any claim against GenSpera.

---

[6] Either action would have resulted in a priority date of 2003. See Augustine Med., Inc. v. Gaymar Indus., Inc., 181 F.3d 1291, 1302-03 (Fed. Cir. 1999).

[7] It appears that under JHU policy, Mhaka – if a co-inventor as she claims – would have shared the benefits obtained from the Patents with Isaacs and Denmeade.

[8] A constructive trust remedy is applied when "property has been acquired by fraud, misrepresentation, or other improper method, or where the circumstances render it inequitable for the party holding the title to retain it." Wimmer v. Wimmer, 414 A.2d 1254, 1258 (Md. 1980). Its purpose is "to prevent the unjust enrichment of the holder of the property." Id.

GenSpera neither owns nor controls shares obtained by Isaacs and Denmeade. Even if a constructive trust were imposed upon the GenSpera shares acquired by Isaacs and Denmeade, effectively providing Mhaka a beneficial interest therein, there would be no effect upon GenSpera.

Accordingly, GenSpera is entitled to summary judgment on all claims against it.

### C. There is No Legal Claim for Conversion

A claim for conversion is a legal, as distinct from equitable, claim. See, e.g., Allied Inv. Corp. v. Jasen, 731 A.3d 957, 968 (Md. 1999).

"Conversion is an intentional tort that requires an exertion of ownership or dominion over another's personal property in denial of or inconsistent with the owner's right to that property." UBS Fin. Servs., Inc. v. Thompson, 2014 WL 2883463, at *5 (Md. Ct. Spec. App. June 25, 2014)(quoting Nickens v. Mount Vernon Realty Group, LLC, 54 A.3d 742, 756 (Md. 2012)). Claims for conversion of intangible property are limited to the type of intangible property rights that are merged or incorporated into a transferable document. Id. (citing Jasen, 731 A.3d at 965). Maryland courts have not extended the tort to cover completely intangible rights. Id.

10

There must be tangible documents that evidence the property interests, and the documents must have been transferred improperly.  <u>Jasen</u>, 731 A.2d at 965.

The only tangible property involved in the instant case that, even arguably, might be the subject of a conversion claim against Isaacs and Denmeade, would be the Patent documents resulting from the Application.  However, Mhaka does not claim an ownership interest in the Patents.  Rather, she contends that Isaacs and Denmeade took her intangible property – her invention – and incorporated it into the Application resulting in the Patents in question being issued to them. Compl. ¶ 106, 107.

Mhaka, therefore, does not present a viable conversion claim.

### D. <u>The Equitable Claims</u>

The Court will assume, for summary judgment purposes, that Mhaka presents a viable claim for equitable relief from Isaacs and Denmeade based upon a constructive trust theory.

### E. <u>The Claim is Time-Barred</u>

#### 1. <u>The Three-Year Time-Bar</u>

Because Mhaka's claim is equitable in nature, the doctrine of laches rather than the statute of limitations is pertinent to

the required timing of filing.  However, "Maryland courts have applied the statute of limitations to constructive trusts by analogy."  Maltas v. Maltas, 197 F. Supp. 2d 409, 427 (D. Md. 2002) rev'd on other grounds, 65 F. App'x 917 (4th Cir. 2003); see also Villarreal v. Glacken, 492 A.2d 328, 335 (Md. Ct. Spec. App. 1985)(analogizing a constructive trust to a "fraud rectifying trust" and applying the statute of limitations without requiring a showing of prejudice).

In the instant case, the Court will, in substance, apply a three-year[9] "limitations" period in the same fashion as it would in a case involving a legal rather than equitable claim.[10]  Thus, it is necessary to determine:

- When did the cause of action accrue?
- When did the three-year period commence?
- On what date was the claim filed?
- Does equitable tolling apply?

---

[9] In certain circumstances, not here present, laches might attach to block injunctive relief after a relatively brief period of time.  This would occur, for example, in a situation in which a plaintiff deferred suing and caused the defendant irrevocable harm by the delay.

[10] The parties agree that Maryland's three-year statute of limitations applies to Mhaka's claims.

12

2.  When Did The Cause of Action Accrue?

The parties agree, for purposes of summary judgment, that the wrongful act occurred no later than November 2006, when Isaacs and Denmeade amended the '354 Patent to claim Mhaka's AMM9 compound.[11]

3.  Commencement of the Three-Year Period

Ordinarily, the limitations period for a cause of action begins to count down, for statute of limitations purposes, "on the date of the wrong." Murphy v. Merzbacher, 697 A.2d 861, 864 (Md. 1997).  However, under some circumstances, the potential plaintiff may not be aware of the wrongful act, and therefore, is not on notice that the statute of limitations is running. Id.  Under those circumstances, "the statute does not begin to run against the plaintiff, unless he or she knows, or through the exercise of reasonable diligence should know, of the wrong." Id.[12]  See also Lumsden v. Design Tech Builders, Inc., 749 A.2d 796, 802 (Md. 2000) ("the statute of limitations will begin to run, when the plaintiff has knowledge of circumstances which

---

[11] The wrongful act may have occurred as early as November 2003 when Isaacs and Denmeade received the benefit of founders' stock in GenSpera, or in February 2004, when Isaacs and Denmeade allegedly misled Hopkins regarding inventorship to get the benefit of Mhaka's invention through the assignment of the patent application solely to them.
[12] This is referred to as the "discovery rule." Murphy, 697 A.2d at 864.

would cause a reasonable person in the position of the plaintiff to undertake an investigation which, if pursued with reasonable diligence, would have led to knowledge of the alleged tort" (citations and alteration marks omitted)).

Mhaka contends that she did not discover the wrong until 2012, when GenSpera filed its declaratory judgment action and she learned that she could not be added as an inventor to the Patents. The Court finds this contention specious. Indeed, the indisputable evidence establishes, beyond question, that Mhaka was on "inquiry notice" of the alleged wrongdoing by no later than 2008.

Mhaka admits that she was conducting inquiries in 2008. In June 2008, she conducted an internet search to determine the status of Isaacs' and Denmeade's pending patent and discovered that she was not named as a co-inventor. She communicated with her then-employer about her concerns that the patent application excluded her as a named inventor, and she followed up with Denmeade, stating that she should be added as a co-inventor if AMM9 was claimed in the patent. In August 2008, Mhaka contacted JHU and learned that the patent had been assigned to Isaacs and Denmeade, who in turn, had licensed it to GenSpera.

JHU officials advised Mhaka in 2008 to contact a lawyer about her concerns, but she did not. Mhaka relayed the JHU

14

communication to her then-employer on October 15, 2008 with the comment: "I think I should go ahead and get counsel."  Mot. Ex. G, ECF No. 85-3.

The Court concludes that no reasonable jury could find that the evidence presented by Isaacs and Denmeade failed to establish that, by no later than August 2008, Mhaka was aware of circumstances which would cause a reasonable person in her position to undertake an investigation that, if pursued with reasonable diligence, would have led to knowledge of the alleged wrong.  Indeed, any reasonably diligent inquiry would have revealed the December 23, 2008 issuance of the '354 Patent[13] in which she was not a named inventor but her compound, AMM9, had been claimed by Isaacs and Denmeade.

Accordingly, the Court concludes that the three-year "limitations" period applicable hereto commenced no later than August 2008.

### 4. When Did Mhaka File Her Claim?

Mhaka filed the state-court lawsuit presenting the claim at issue on November 1, 2012, more than four years after the three-year "limitations" period commenced in August 2008.

---

[13]   The '648 Patent, which issued August 3, 2010, was a continuation of the '354 Patent that issued in December 2008.

Mhaka contends that, at least with regard to the counterclaim in MJG-12-772, presenting the same claims as MJG-12-3302, the filing date should relate back to the commencement of the lawsuit by GenSpera on March 12, 2012.  The Court notes that even if this position were valid as to GenSpera, it does not appear sound as to Isaacs and Denmeade since they did not become parties under MJG-12-772 until the Counterclaim was filed against them on May 13, 2013.  In any event, even a March 12, 2012 deemed filing date would be more than three and a half years after the three-year "limitations" period commenced in August 2008.

### 5. Does Equitable Tolling Apply?

Equitable tolling suspends the running of the limitations period as long as "the plaintiff uses reasonable care and diligence in attempting to learn the facts that would disclose the defendant's fraud or other misconduct." Fed. Prac. & Proc. § 1056.  The doctrine of equitable tolling is applied narrowly in Maryland.  See, e.g., Kumar v. Dhanda, 17 A.3d 744, 754 (Md. Ct. Spec. App. 2010) ("In Maryland, equitable tolling only will be applied to suspend the running of a statute of limitations . . . if the defendant holds out an inducement not to file suit or indicates that limitations will not be plead[ed]." (internal

quotations omitted)); Adedje v. Westat, Inc., 75 A.3d 401, 408 (Md. Ct. Spec. App. 2013)("[E]quitable tolling seeks to excuse untimely filing by an individual plaintiff and is generally applicable where the plaintiff has been induced or tricked by the defendant's conduct into allowing the filing deadline to pass.").

Mhaka contends that equitable tolling should apply in the instant case, but she presented no evidence adequate to support a finding that Isaacs and Denmeade acted to prevent her from filing suit. Certainly, after the commencement of the three-year "limitations" period in August 2008, there is no evidence of either action or inaction by Isaacs and Denmeade that supports the proposition that they prevented her from filing suit or lulled her into sleeping on her rights.

Accordingly, equitable tolling does not apply.

V.   <u>CONCLUSION</u>

For the foregoing reasons,

    1.   Dr. John Isaacs' and Dr. Samuel Denmeade's Motion for Summary Judgment [Document 83] is GRANTED.

    2.   Counterclaim Defendant GenSpera, Inc.'s Motion for Summary Judgment [Document 106] is GRANTED.

    3.   Plaintiff and Counterclaim Defendant GenSpera, Inc.'s Motion for a Protective Order Preventing Defendant and Counterclaim Plaintiff's Rule

17

        30(b)(6) Deposition of GenSpera [Document 80] is DENIED AS MOOT.

4. Judgment shall be entered by separate Order.

SO ORDERED, on Friday, September 12, 2014.

                                               /s/
                                    Marvin J. Garbis
                               United States District Judge